is 15-1-6-4-0 Lisa Pazol et al. v. Tough Mudder Incorporated et al. Go ahead. May it please the court, Attorney Barry Altman for the appellants, with me Attorney James O'Connor. I would like to ask the court if I could reserve two minutes for rebuttal. Sure. Yeah, thank you. Let me turn first to CAFA jurisdiction. I think plain and simple, our position is the amount in controversy is not $5 million. We know 6,960 registrants did not attend the event. They paid, we're told, $617,574.86. If you multiply it, you get $1,852,724.58. Add on some attorney's fees, you're near $2 million, not $5 million. Then the appellees say, well, what about extra expenses or people lost lodging reservations, gas, food? I don't know what food has to do with it. But they had all the information. They had the addresses. They chose not to give it to the district court. So our position is you would be, and they have the burden of proof, we're all speculating what above that $2 million or so there would be in damages. So our position is we don't even get close to the $5 million. And that's assuming the complaint applies to a nationwide class? What you just said works on your view, even if we assume the complaint applies to a nationwide class? Right. We believe in our complaint, even though we talked about all people that just under the constraints, again, under Massachusetts law, you can only have a class of mass residents. Well, I'm asking something different. Everything you just said about why the jurisdictional amount is not met is true, even if we read your complaint to apply to a nationwide class? Yes. Okay. Yes. So I don't believe the court should get to arbitration, but let me discuss it. I guess the first issue for you. Just before you do that, can I just? Sure. How do we deal with the following problem? There could have been some travel expenses. In fact, it would be surprising if there were no travel expenses that resulted from the change. I would agree with that. Okay. So what are we supposed to do then with respect to figuring out how reasonable it is or what reasonable probability there is that the travel expenses would be sufficient to kick it up? How do you suggest we approach that, given your acknowledgement that once we accept that there are some travel expenses, what are we supposed to do when the defendant says, well, here's a perfectly reasonable accounting of what those travel expenses would be? Well, we would say they didn't give you a reasonable listing. I mean, they had the information. It's not like somebody went in and bought it. Well, they won't have the information about plane tickets that had to be canceled or actual rooms that were booked. Those would be through the individual registrants, which are the people in your class. So I'm just wondering what you suggest we do in a case like this when there's certainly going to be expenses in addition to those from the registration fee itself. Then we have the defendant says, well, it's reasonable to think they're going to seek this amount for each person who came. What do you suggest we do in response to that argument? Well, they know if somebody, for example, lived near Westbrook, Maine, they wouldn't have any added travel expense. So they know where everybody lives. If everybody lived in Maine, you wouldn't have much travel expense. If everybody lived in Rhode Island or whatever. Counsel, we're told we're not supposed to turn these jurisdictional inquiries into a mini trial. I mean, are you actually suggesting some kind of individualized inquiry into expenses incurred by the members of the class? I mean, that strikes me as unwieldy and exactly the kind of mini trial that the court's not supposed to engage in. I think for the most part we were trying to find out from them where people live. Because I think if you knew where people lived, you could get a sense of what added expenses. They had that information. I would say that the point remains they have the burden of proof. I think the cases say you can't act on speculation. So when you ask what are you supposed to do, it's like any case, they have the burden of proof. They have some information that I believe would have made your job doable or easier, but they chose not to give you the information. So they're stuck with that. That would be our position. I'm sure I should know this from the brief, but I forget. Was there any request for discovery? There was. And that was denied? Yes. But it was your request? They didn't request any discovery? No, we did. Saying that they had, they were in exclusive possession of the information. And does your complaint reference the kind of expenses or damages that you would be seeking? If I recall, I believe we may have, we did say added, we did ask for a refund for people, for registrants who didn't attend. And I think we did ask for added travel expenses. But there's no attempted quantification at all of damages in your complaint. Isn't that correct? Because we would have no way of doing that. So, no, we didn't even try. You want to talk about the arbitration issue? You don't have to, but if you. Oh, absolutely. So, I think there the first issue you would confront is the delegation clause. Because the issue is, I guess, the judge below didn't deal with the delegation issue or he implicitly ruled in our favor. But I guess that would be the first issue for you, whether there's anything for you to decide or whether everything goes to arbitration. And I guess we learned that the delegation clause is a matter of contract. And so I guess here there are supposedly three contracts, the container contract, the arbitration clause, and then this delegation contract. So, if you look at it, we would say that there's no clear and unmistakable evidence of intent to arbitrate the question of arbitrability. We say, again, there's no meeting of the minds and also there's unconscionability that the applicable AAA rules are not specified and also these new consumer arbitration rules did not go into effect until after our people putatively registered. And then there's the further issue. If you look at what might be considered the delegation clause, it says, I agree that all disputes, controversies, or claims arising out of my participation. I guess we would argue that that's for you, even on the delegation. The way they worded it, they didn't word the delegation clause that any issue of arbitrability goes to the arbitrator. They say that all disputes arising out of my participation shall be submitted to binding arbitration in accordance with the applicable rules of the American Arbitration Association. So, I think even there. But isn't there a provision in the rules of the American Arbitration Association which suggests that just this kind of dispute over the scope of the arbitration clause, that that kind of issue is, in fact, for the arbitrator. Isn't that provided for, again, in the rules of the AAA itself? I think it's rule seven, something like that. And that's what I was getting at before, that since we're dealing with this heightened standard of clear and unmistakable evidence of intent in order to require parties to arbitrate the question of arbitrability, if it's the rule seven in the new consumer arbitration rules, that didn't exist when our people putatively registered. And I believe there might be at the AAA over 50 sets of rules, and no rules were specified in our arbitration provisions. So, when our people, how were they supposed to know whether it was going to be consumer rules apply, construction rules apply, commercial rules? And, again, they talk about, well, there's commercial rules. How would our people have thought that commercial rules would apply? And the consumer rules, if it's the rule seven within the new consumer rules, they didn't exist at the time of the putative registration. So, I believe that that leaves the arbitration issues in our opinion with you. And we've set out in our brief, in our reply brief, the different formation issues. Can I ask you about that? If you were to, you seem to say there's no contract at all. Yes. If you win on that, that would seem to get you out from under arbitration. Yes. But you'd be forfeiting any right to recover under the contract. Well, I believe under Chapter 93A we would be entitled to. To what? If there was no contract at all, what kind of 93A claim would be left? Well, under Chapter 93A, it's got nothing to, I believe, nothing to do with contract. We'd be able to get refunds and just any other damages flowing from unfair and deceptive practices. But if there was no contract, what would be unfair and deceptive about it? There would have been just a statement saying, we're going to have a place that we might move. You decided to give money to a place that might move, for a race that might move. The race moved. You gave the money. What would be unfair or deceptive? I'm not saying, it just seems a little odd for you to be pushing the argument that they had no obligation not to move the race in order to win on the arbitration issue because if they had no obligation not to move the race, that would seem to undermine your complaint that anything bad happened to any of your runners. Well, I believe we could act on, we could get recovery on representations, even if there isn't a contract under Chapter 93A. I'm sorry. The representations, though, I guess would be what? I mean, I thought your argument was that there's no contract because there was no representation other than the fact we'll do whatever we want. That's why you say there's no contract. Yes. So if that was the representation, we'll do whatever they want. It just seems that that's going to have repercussions for the 93A claim. Well, we would say the whole thing was deceptive, and we would proceed on that basis. Well, you do have a claim for unjust enrichment, right? Yes. That arguably might survive the conclusion that there was no contract, and yet they retained all the registration fees and gave your clients nothing in return. Yes. I used up all my time, so I guess there will be no rebuttal. Thank you. Thank you. Can I just clarify that? You reserved two minutes, so you do have two minutes for rebuttal if you would like it. You don't have to take it. I used up my 15. I appreciate that. I might use it. Thank you. Yes. It was deducted already from your – so that's why I'm saying you have two minutes if you would like it. May it please the Court. My name is Michael Tuter from Foley & Lardner. With me is Jacqueline Pilch, my associate. This appeal really involves a garden variety dispute between some folks who wanted to try an extreme obstacle course race and the small company, Tough Mudder, that puts these on. Let me just spend just a couple of minutes. If you don't know about Tough Mudder, not everybody does. Tough Mudder is a small New York-based company. It organizes these highly challenging, physically rigorous obstacle course events all over the country. And like with other extreme kinds of sports, heli skiing or walking the huts in the White Mountains, people, participants who sign up, recognize, in this case specifically because of what they sign up with, that they aren't going to get refunds if they decide in the end not to show up. In this case, the no refund policy is not just stated once, it's stated twice. There's the longer contract, which includes the arbitration clause and the mediation clause includes a no refund provision. And then there's another provision that they sign up for that specifically says you don't get a refund. And in both instances, there's a box and you have to click it and it says, I agree, and the text box scrolls so that if you want to know what it is you're agreeing to, you have every ability to do that. Counselor, can I just ask you about that no refund issue? I mean, it's not just in the circumstance where they choose not to show up. There seems to be language in this contract that I believe Judge Barron is referring to which suggests that your client can not go forward with the event for any reason, any reason at all. And even under that circumstance, there's no obligation to provide a refund. Thus lending itself to their argument that this really is an illusory contract in the sense that you and your client incurs no obligations at all under this contract. Again, you can cancel for any reason under any circumstance and there's no obligation to refund a dime. That does sound like a contract where there's no neutrality of obligation. I think with all respect, Your Honor, that's not entirely true. Under this section in the main contractual provision, the first one, it talks about the title is emergency delay or cancellation. And it says, I acknowledge, that they may delay, modify, or cancel, but this is in the event of some kind of an emergency or cancellation need. It's not simply at any time at the complete discretion of Tough Mudder. But there's a subsequent provision called fee refunds, which does say that you can cancel for any reason and there's no obligation to refund. It's much broader than that cancellation policy that you're referring to, much broader. Well, I agree, although I think that that policy refers back to the main policy of the contract, and that one is limited. And I think for there to be consideration, as I think we all, you know, for law school courses, you require merely a peppercorn. You require only a little something. And in this instance, I think it's important that What is a little something that you're That there has to be some kind of an emergency, some kind of an event, some kind of an instance that requires them to do something to move the event. What's the emergency here? The emergency here was simply your failure to contract with the outfit in Haverhill at the time you took these people's money. Well, that's actually, it's not in the record, Your Honor, but the fact is it's not because this was a matter outside of Tough Mudder's control. The event planner who claimed to have the ability to provide the place in Haverhill was stopped in the last minute by the town authorities. And so we were left with an event planner who said, We can use this site, we've worked with waste management, you can have your runners run all over it, no problem. And then with a week to spare, it turned out the town authorities said, We're not going to allow that event planner to do this, and we were left with no place to go. So it really, this is all outside the record, Your Honor, but to suggest that we just didn't like the place or we didn't permit or whatever, we get our permits the way other people do for events. You don't get permits a year in advance. You get permits because it's not difficult typically to get permits. In this instance, the event planner failed. But your position is there is a contract because you have to show that you had some sufficient reason for cancelling. Correct.  They have a breach of contract plan. Let me just talk about a couple of things which I think are important because you raised them early, and that has to do with the jurisdictional question. You know, the complaint right now, in some respects similar to what you say, Judge Barron, now they want a very limited approach to what it is that they're arguing. But in the complaint, they argue something very different. The two classes that they're seeking, one is the people who participated, I'm sorry, who didn't participate, and they want their money back and any other incidental expenses. But the other class, which actually is the larger class, they specifically talk about added expenses, including but not limited to gas, food, and or lodging. And then in their damages, in their prayer for relief, they seek disgorgement of profits, of ill-gotten gains. They talk about rescission. They talk about a permanent injunction. I mean, all of those things, if we were enjoined, for example, to do other events, this would bankrupt what is a very small New York company. So the question of the amount in controversy is what's there. They're stuck with their well-pleaded complaint, and their well-pleaded complaint asks for lots of things. But your argument to the district court and to us, as I understand it, about how you get to $5 million is solely based on a calculation about the additional travel expenses. Is that wrong? Not solely. I mean, there's about a million-something. No, no, no. Everybody agrees that's not enough. Right, that's not enough. So you don't rely on disgorgement or rescission or injunction that might bankrupt the company as part of your argument is how you got to $5 million. We felt because we felt that it was pretty clear. That's just a yes or no, right? Yes, it's a yes. Okay, so then just as to the expenses. Yeah, so. You also rely on the troubling of damages under 93. And attorney's fees. Yeah, but. But all of those are. I mean, this court has held on multiple occasions that those are to be included in the amount in controversy. But if I get it right, you can't get the $5 million unless you can attribute a certain amount of expenses to every person in the class who came here for the race. Is that right? We tried to use an average on that. That's correct. Yeah, and so, roughly speaking, you're allocating about $150 of expenses to each person who came. We used a federal per diem. Yes, Your Honor. Okay, so why is that not speculative? In other words, surely it's possible that some unknown number of the people who came had no expenses at all. Surely, but there's also people who may have had to change their flights and it cost hundreds and hundreds of dollars. Well, and just under a most, if that's how you'd say it, who knows how many are in one group rather than another. So why isn't this just under most just literally speculation as to what the travel expenses that are fairly attributable to how many of those runners? And the way that would get known is as the case develops in state court, they'll have to flesh out actually how much damages they're seeking, at which point you could remove. So what's the point for doing it now? I don't quite follow your argument. Well, because I think, as I can't remember which of your honors made the point, this is not supposed to be about a mini trial. But I'm not saying that. I totally agree. There's no mini trial. It's just a matter of you have the information you have now, they have the information they have now. Looking at it right now, one could speculate as to a high amount of expenses or a low amount of expenses, but we're not supposed to speculate. And so we could, rather than having a mini trial, just wait. Let the state court proceeding play out. If it becomes clear that they are, in fact, seeking that much damages, at that point you can remove. Well, Your Honor, again, I think we have, if we have met the CAFA requirements, we're entitled to be in federal court. Absolutely. So I guess I'm just asking what beyond speculation have you done? With all respect, I don't believe it's speculative in that we are attempting to take the information at the beginning of the case that we have. We know one thing for sure, that people were going to come to Haverhill, Massachusetts, and instead they had to go up to Westbrook, Maine. But we don't know how many of them are out of state or in state. We don't know that thing, and we can assume that some are less and some are more, but it's not unreasonable. To assume that all of them had expenses? All of them were planned. No, but some of them had expenses considerably more than they may now fly to Portland. They may fly into Boston. They may have to do something different. But I think the point is, as in the – But your numbers work only if we attribute about $150 to every single person. That's true, but there are people who may have cost $500 more. And there may have been some that were zero. Correct. So how do we know the $150 is not just a number picked out of the air and just therefore speculative? That's what I don't get. It's not picked out of the air, with all respect. We used it. We took what would be the case for an ordinary citizen who has to travel that much further. And then you assumed every single person who came had that much expense. Well, we used it as an average. We didn't assume it. We said when you use an average, some people are zero, some people are $500. But the average cost, as it's going to be, is basically the federal per diem. And I think under the Romulus case, the case against CBS from 2014, you see this kind of an analysis. That case twice went back to the district court. And this court finally said, no, you know, we've got to do this up front. We're going to take a look at what the numbers are. They may not be perfect. We're not expecting. It's not an onerous burden. That's what Amoche says. Can I ask you something? Suppose most of the people who came to the race were from in-state. Would that change how reasonable your calculation is? From in-state Massachusetts? Yeah. No, actually. I think it would confirm it because it would be one more hour that people needed to. You think they'd have flight expenses and lodging expenses? No, Your Honor. But I'll tell you that the largest expense, if you look at it, is gas. It costs to go up to Westbrook, Maine, the hour to go up and the hour to come back. I can't remember what the number is. It's in the complaint. How much is that per person? I honestly don't remember, Your Honor. It's not $150 a person. No, but it could be as much as $80 a person. Okay. If it's $80, you lose, though, right? If we use $80 as the number for everybody, you don't get the $5 million. I'm not sure that's true. If that was true, I guess the reason I ask is because you have the information about where the people came from, don't you? We know when they signed on their addresses, yes. And you didn't put that in the record, though? We did not, Your Honor. So isn't that a problem? Why is that not a problem? That's information you had. A motion talks about the person seeking to show the amount as met has an obligation, if they have the information, to put it forward. No, actually, I think, with all respect, I think Romulus says just the contrary, that it is not the burden on the defendant to be dredging up their material to come up with information. That comes up in the context in that case of when do you need to file the notice. But the court pretty clearly says it's not an obligation for there to be sort of pulling out the records, figuring things out. It's supposed to be a not onerous burden and only reasonable probability. I note here that in this case, of course, the plaintiffs had an opportunity to say what they would have spent and what their expenses were. And they put in, although they put in other affidavits, they say nothing about the costs other than the registration fee itself. They say nothing about friends. They say nothing about anything, frankly. There's no opposing factual information, even though the plaintiffs have information in their possession as well. So we've got a one-sided situation. We're concerned about removal because of the 30-day clock. And we put in the evidence that we have. And the evidence is roughly this is how many people weren't able to come. We pulled out, if Your Honor recalls, we pulled out people who just came as spectators, although honestly they too could be added costs. So instead of $13,000, we made it $11,000. We tried to do a reasonable approximation of what we thought it would cost using reasonably available information as the 30-day clock ticks away so that we can be sure that we don't miss it. Otherwise, the argument might be if we finally get this information, we come forward to the court, well, you could have done that in the first 30 days, so you're out of luck. So we tried to do the best we could. Could you explain that to me? So if, as I think a motion suggests at one point, that if we said you hadn't met the showing for the amount, then it would go back into state court. If the case develops and it becomes clear that your guess about the expenses they were seeking was correct, would there be any bar to you removing at that point? I think if this court holds that we did not meet that burden, then presumably when some other paper, I believe is the language from the removal statute, we could then remove again. I mean, frankly, our hope would be that whether we're in state court or in federal court, we don't belong in court at all. We belong in individualized mediation and arbitration. So in either event, it's either this court or the state court, we would hope, enforcing the contract and saying go individually. But nothing prejudices your ability to remove later, that's all I'm saying, about deciding now that the showing hasn't been met. That's true now that we're in court, but the fact was when we tried to do this, we were concerned about the 30-day clock because we don't know what the court's going to do about whether we're timely or not. Let me just say a couple of words about the delegation issue, and I think the court has already raised the point. But Section 7, with all respect to my brother, Section 7 of the AAA rules has always been Section 7, or at least always with respect to relevant times here. The consumer rules that he refers to, there used to be a consumer supplement to the AAA, but they've just supplemented a section where 7A said the arbitrator gets to decide all of these issues of scope. And once the consumer rules went into effect, whether they are the ones that we use here, there's again a Section 7 that says scope and jurisdiction, and all of those issues are for the arbitrator in the first instance. Counsel, if we thought that there was some substance to the argument that this is an illusory contract in the sense that your client did not obligate itself to do anything because of language in the agreement, and hence there never was a contract, would it be your position that that issue is also for the arbitrator, that that type of issue as to whether there, because we're not talking about the enforceability, the legality of the arbitration clause, as we're talking about whether there is a contract at all, would it be your position that that is an issue that should go to the arbitrator? Yes, I think under Buckeye and many other cases, you have to sever the arbitration clause itself and say, is there some reason that the arbitration clause itself is defective? And I don't believe that there is any basis for that under this, especially because the particular section of the contract that I was referring to includes this piece about no refunds occur in an emergency or delay or cancellation. So the arbitration clause is, in fact, has that consideration. But in any event, the point is that the clause, there's no basis to invalidate the clause, which means that should go to arbitration and it should go to arbitration on an individual basis. Thank you. I didn't know if any of your honors had any questions. Otherwise, I would just conclude by saying I still believe that within the 30 days, they could have come up with the information about who were the registrants and who were the participants. They just had to push a button on a computer and print out names and addresses. Can I ask you one question? I want to make sure I understand. In your brief, and you said it again in argument, even though the complaint says all registrants, your contention is the complaint only is referring to mass residents? Yes, as a matter of law, because since there's no right of opt-out in Massachusetts. Well, just putting aside, whatever the law was, you get to decide who you're suing on behalf of. Correct. So I guess I'm just asking, is that complaint suing on behalf of only mass residents, or is it suing on behalf of a broader class? We did word it broadly, I think, all. So I'm not going to tell you we didn't. But as a matter of law, what we wanted to do was just proceed on behalf of mass residents, but then if for some reason the case got removed, we want to do it nationwide. So that same complaint, you would not have to amend to make it a nationwide complaint, in your view? Correct. Okay, I got it. But the actual complaint that you brought in a state court would necessarily, as a matter of law, be construed as limited to a class of Massachusetts residents? In Massachusetts state court because of no right of opt-out. Can I ask, just to be really precise, but under mass law, I get there's no right of opt-out, which would mean it would apply to all mass residents plus all non-mass residents who had minimal contacts and met the long-arm statute? Would that be more accurate? I believe that may be accurate. I haven't looked at that. And then I guess there would just be a question, wouldn't all of these people potentially have minimal contacts and meet the long-arm statute since they all had been in contact with a race that they were hoping to run in Massachusetts? That I couldn't answer without looking at the, I believe it's the Supreme Court case. But I know as a practical matter, in Massachusetts state court because there's no right of opt-out, from what I've seen, I can just tell you, I could be wrong, but I don't think so, generally it's just mass residents are part of state classes. And I just haven't read the Supreme Court case recently enough that I could, I mean I could send you a letter if you wanted. Yeah, if you want to send a 28-J on that and if you would like to respond to it, that would be helpful. And I still think, if I could just one last thing on the delegation issue, they didn't specify what the rules are. I think there are 50 types of rules, and they're brief. If they talk about commercial, well if it's commercial, then there's a rule 7, or if it's the new consumer rules, there's a rule 7. But again, on this clear and unmistakable heightened standard, how would our people know? And then also the way the delegation provision was worded, then in effect, how would they know what would be in effect down the road? So I don't believe that meets the clear and unmistakable, and it's distinguishable from I believe it's Apollo in the AUR case. What would you say in the case of a contract that simply had a conventional choice of law problem, state X, state Y, the law of that state will govern the contract. And in fact, during the contract period, the law of that state changed. Would you say that it was the law prior to the date of contract, not the current law that would apply? I believe that's what maybe you're referring to. Is it the emergia, the recent Supreme Court? If I'm doing it, I'm doing it by luck. No, I use it as practice. But the question is, if in effect, if there is a choice of law in a conventional contract, does that freeze the law at the moment of contract? Well, if I might, and I'm not trying to evade your question, for example, if you have one of these delegation provisions, and you say the arbitration will be under these rules, and you either attach a set of rules, or if it's permissible, tell somebody to go look at rules online. At least they have a chance to know what the rules are. And I guess if the rules, AAA rules, changed in the meantime, they could arbitrate under the old rules because those were what are attached, but at least the consumer knew what the rules were. But I would think that as a matter of contract interpretation, that same consideration would require that a choice of a given state's law would freeze the law for purposes of contract administration at the moment of contract. So that if we venture down the road that you want us to go, it seems to me where we are at least taking a serious step in the direction of something more than just an arbitration problem. Well, I believe if it's a matter of contract, you have to know what's being incorporated. Okay. I understand. Thank you. Yeah, thank you.